UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION


UNITED STATES OF AMERICA,    )  DOCKET NO. 3:10-CR-238
    )
         Plaintiff,     )
    )
         vs.          )
    )
PARKER ANTRON COLEMAN,     )
    )
         Defendant.     )
_____)


TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE ROBERT J. CONRAD, JR
UNITED STATES DISTRICT COURT JUDGE
JANUARY 22, 2014




APPEARANCES:

On Behalf of the Government:

        STEVEN R. KAUFMAN, ESQ.,
        Assistant United States Attorney
        227 West Trade Street, Suite 1700
        Charlotte, North Carolina 28202



On Behalf of the Defendant:

        BRIAN MICHAEL AUS, ESQ.,
        P.O. Box 1345
        Durham, North Carolina
        27702



LAURA ANDERSEN, RMR
Official Court Reporter
United States District Court
Charlotte, North Carolina

1      P R O C E E D I N G S

2   JANUARY 22, 2014, COURT CALLED TO ORDER 9:00 a.m.:

3           THE COURT:  Good morning, everyone.  We're here in

4   the matter of United States V Parker Coleman for sentencing.

5   Are the parties ready to proceed?

6           MR. KAUFMAN:  Yes, Your Honor.

7           MR. AUS:  Yes, Your Honor.

8           THE COURT:  Very well.  Mr. Coleman was found guilty

9   by a jury on August 16th of last year, and after that his case

10  was referred to the Federal Probation Department for the

11  purpose of preparing a presentence report.  I've received and

12  reviewed that report.  I have a few questions for Mr. Coleman

13  with respect to the presentence report, so Mr. Coleman would

14  you please stand.

15          DEFENDANT COLEMAN:  (Complies.)

16          THE COURT:  Have you had a chance to review the

17  presentence report?

18          DEFENDANT COLEMAN:  Yes.

19          THE COURT:  Do you believe you understand it?

20          DEFENDANT COLEMAN:  Yes, sir.

21          THE COURT:  Have you had enough time to go over the

22  presentence report with your attorney?

23          DEFENDANT COLEMAN:  (Nodding head.)

24          THE COURT:  All right.  You may sit down.

25          Mr. Aus, I'll be glad to hear from you on any

1    objections to the presentence report.

2              MR. AUS:  Thank you, Your Honor.  Good morning.

3              THE COURT:  Good morning.

4              MR. AUS:  Your Honor, basically the nature of the

5    objections are more of a preservation matter, given what the

6    verdict was with the jury in this particular matter.

7              However, a couple points I would just make for the

8    record, if I may at this point.

9              One matter that just came up this morning talking

10   with Mr. Coleman has to do with his paragraph 75 of page 20.

11   It does not affect the guideline calculations, but what

12   Mr. Coleman indicates to me is that he believes that the

13   correct caption of that -- although he was charged with what

14   was possession with intent to sell or deliver, that

15   effectively he pled guilty to what was more or less a simple

16   possession charge, and just ask that that be reflected in the

17   report.  But again, it does not -- given what the 10 years,

18   suspended 9 years that were suspended, it still winds up being

19   two criminal history points.

20             THE COURT:  I see.  Does the government or the

21   probation office have a copy of the judgment?

22             MR. KAUFMAN:  I do, Your Honor.

23             THE COURT:  I'll defer finding on that, and when you

24   find it, let's go ahead and make it an exhibit to this

25   sentencing hearing.

1    MR. AUS:  That will be fine.  Thank you, Your Honor.

2    THE COURT:  It will speak for itself.

3    MR. AUS:  Your Honor, besides that, the only other

4    issue, and we recognize that the law is against us, paragraphs

5    58 and 59 of the presentence report, which that's going to

6    be --

7    THE COURT:  The jump for money laundering?

8    MR. AUS:  No, actually, Your Honor, that should be

9    the firearms, the two level jump for that.

10    THE COURT:  I see.

11    MR. AUS:  Basically, it was our contention that --

12    MR. KAUFMAN:  Your Honor, by the way, on the issue

13    of the certified record conviction, I have what was marked as

14    Government's Exhibit 12 for identification at trial.  We

15    submitted a 12a which was a redacted format.  If I can tender

16    that to the Court?

17    THE COURT:  Yes.  You may approach.  I would like to

18    see it.  Thank you.

19    MR. KAUFMAN:  (Handing paper writing to the Court.)

20    THE COURT:  All right.

21    MR. AUS:  And, Your Honor, just as to paragraph 58,

22    just to reiterate what we just discussed as to the judgment.

23    And then paragraph 59 is the -- involving three or more

24    firearms.  One of the things that I raised as objection for

25    the record, is that, I do not believe the jury found

1  specifically which firearms were involved.  However, I

2  understand though, pursuant to the Fourth Circuit precedent in

3  *U.S. versus Camps*, which is 32 F.2d. -- or actually F.3d. 102,

4  1994, that pretty much takes care of that issue.  But I just

5  raise it for the record.

6          THE COURT:  Very well.

7          MR. AUS:  Outside of that, Your Honor, there's

8  nothing else, quite frankly, outside of what we've already

9  dealt with, which I again reiterate our preservation issues

10  regarding the calculations of the guidelines.  I would like to

11  be heard though when Your Honor is ready about possible

12  variance in this case.

13          THE COURT:  I'd like to ask the government about

14  paragraphs 46 and 47, the adjustments under 2D1.1 for threat

15  and for premise maintenance.  Whether or not those adjustments

16  were in effect at the time that the offenses were committed,

17  and if not, whether they ought to be considered in today's

18  sentencing hearing; Mr. Kaufman.

19          MR. KAUFMAN:  Your Honor, I -- off the top of my

20  head.  I don't know when revisions were made to the U.S.

21  Sentencing Guidelines with regard to these.  I know that

22  maintaining was a relatively recent offense -- sorry, specific

23  offense characteristic that was added.

24          THE COURT:  They do these books by color to help

25  judges who can't remember things.  And when I looked up the

1　November 2010 Guideline, it's one of the darker green colors,

2　and it didn't seem to me to be in effect in that Guideline,

3　which probably means that prior to that it wasn't in effect.

4　So that anything before November, I guess, of 2011, would be

5　covered by that book.  I don't see those adjustments in 2D1.1

6　in November of 2010.

7　　　　　　MR. KAUFMAN:  Your Honor, I am right now going to

8　the sentencing commission's website and --

9　　　　　　THE COURT:  Which thankfully is back up.

10　　　　　I think what I'll do, Mr. Kaufman, conclude

11　tentatively that they weren't in effect in November 2010, and

12　therefore ought not to be considered as part of the guideline

13　calculation today.

14　　　　　If anything -- if you, during the course of this

15　hearing, glean anything else you want me to consider, I'll

16　reopen that for reconsideration.

17　　　　　But it appears to me that these were adjustments

18　that came in the wake of the Fair Sentencing Act, and came

19　into effect after the offense conduct set forth in the

20　presentence report.  And therefore, tentatively, I'm

21　making the -- for purposes of consulting the advisory

22　guidelines, I'm not going to include the threat or the

23　premises adjustment.

24　　　　　And so that would change the calculations in

25　paragraph 46 and 47, and any calculations that rely upon those

1    paragraphs.

2            And I think at the end of the day what it does, is,

3    reduces the offense level to -- total offense level of 40 from

4    a 44.

5            A offense level 40, criminal history category III,

6    still results in a advisory sentencing range of 360 months to

7    life.  And those are the guidelines the Court will consult for

8    purposes of this sentencing.

9            Having made those guideline determinations, I'll be

10   glad to hear from you, Mr. Aus, on behalf of Mr. Coleman.

11           MR. AUS:  Thank you, Your Honor.

12           First of all, Your Honor, I would like to point out

13   this morning that Mr. Coleman's family has appeared in court.

14           Would you please stand.  These are family members

15   who I understand are his mother, his father and some other

16   family.  Thank you.  You may sit down.

17           As a show of support, but also the support that is

18   out there for him.

19           Your Honor, certainly we're asking the Court, first

20   of all, even though Your Honor has found this range to be a

21   40, that if the Court would consider, based on my arguments as

22   contained within our objections, that a more appropriate level

23   would be a level 34, history category III, which would be 188

24   to 235 months, of course subject to the minimum mandatory

25   terms of imprisonment 20 years, because of the 21 U.S.C. 851

1  notice being filed.

2        Your Honor, if I may, as far as -- I'm asking the

3  Court, in spite of all this, to consider a downward variance

4  in this particular matter.

5        What we have is basically a young man here who faces

6  obviously a -- lots and lots of time.  And I'd ask the Court

7  to consider under 18, U.S.C. 3553(a), to impose a sentence

8  that is sufficient but not greater than necessary under the

9  circumstances.

10        Now, Your Honor, granted I have the disadvantage of

11  not hearing everything that happened in this case before I got

12  involved in it.  But one of the things that strikes me is that

13  what we have are two mandatory sentences already in effect.

14        We have, because of the 851 notice and the verdict,

15  we are looking at, at least 20 years right there minimum

16  mandatory as Congress mandates.  Then we have the 924(c)

17  matters, that the jury has found Mr. Coleman to be guilty of.

18        And when we take those altogether, we have a minimum

19  mandatory sentence of 50 years, on a man who right now is,

20  basically, he is 28 years old.  So he would be in his mid 70s,

21  before we even be looking at any kind of post-supervision

22  relief for this young man.

23        Now, given that's already a horrible waste of a

24  life, one thing that I ask the Court to consider is a lot of

25  this is driven by, of course, marijuana.  And what I've tried

1    to include in the motion for a downward variance in this

2    matter, is that we had a dramatic change in the way society

3    views marijuana possession and usage, to the point now where

4    for the first time it appears according to the Brookings

5    Institute Report that I've included in here, is that the

6    country's attitude toward marijuana has got to the point where

7    it really is -- it's on the verge of becoming either legal or

8    absolutely decriminalized throughout the country.

9           It has not happened yet, but even the Department of

10   Justice recognizes that to some extent.  Granted, not for

11   matters such as drug trafficking, but DOJ, from what I

12   understand, I've included the memorandum in there as an

13   attachment, is basically backing off of any enforcement of

14   states such as Colorado and New Jersey, or other states where

15   marijuana -- recreational marijuana may be coming in.

16          So given that, Your Honor, we're at a point or a

17   cusp in, I think, our criminal justice system now, where I

18   would argue to Your Honor that the public does not expect such

19   severe sentences as 360 to life for marijuana.  That puts it

20   in the same level as murder, for example, Your Honor, and

21   violent crimes.

22          Now, granted, he was found guilty of 924(c)s, but we

23   still have the marijuana.  And because of that, Your Honor,

24   I'm asking Your Honor to consider in your discretion, and

25   given the surrounding circumstances and pursuant to 3553(a),

1    that this would be a sentence of 50 years, that is the

2    mandatory minimum -- and of course without conceding guilt in

3    this case -- but those mandatory minimums are sufficient and

4    are probably more than necessary but at this point given the

5    standards we have to operate under, that would be the

6    necessary sentence for someone that is in Mr. Coleman's

7    situation at this point.

8            THE COURT:  What -- what 3553(a) factor would be

9    affected by your legalization or public perception argument?

10           MR. AUS:  I would suggest, Your Honor, it would be

11   the factor to reflect the seriousness of the offense, to

12   promote respect for the law, and to provide just punishment

13   for the offense.  I would say that would be certainly where

14   that would fall under with the way the attitudes are changing.

15           As to the other aspect, Your Honor, I would also

16   argue to you under subsection 2c, that a 50-year sentence, the

17   mandatory minimums are more than sufficient to protect the

18   public by any further perceived crimes that Mr. Coleman would

19   commit.

20           Quite frankly, given what he's looking at, he would

21   be lucky, it would seem, even with a 50-year sentence if he

22   survives that in prison.  And I would argue to Your Honor that

23   under those circumstances, that would be appropriate.

24           THE COURT:  Seems like the argument could be made

25   that in some respects the attitude towards gun possession is

1    in flux in the various states, and the different states have

2    different gun legislation.  But yet the federal law is uniform

3    across the country.

4            And so, even though some states have gun legislation

5    that is more restrictive or less restrictive, when someone

6    uses or carries a firearm in violation of federal law, the

7    punishment is not effective.

8            It seems like -- your argument is that in a couple

9    of states, certain forms of marijuana usage is tolerated.  But

10   I don't think any of those states and I don't think the

11   federal law has moved in that area in any way with respect to

12   marijuana trafficking, which is the crime that brings

13   Mr. Coleman before this court.

14           The trafficking conduct, seems to me, would be

15   illegal under existing law, and would also be illegal under

16   some future state of the law in which marijuana possession and

17   use is in some form legalized.

18           And so I don't know -- I'm not -- I'm not following

19   you across the bridge from the fact that some states are

20   enacting more permissive legislation as to use of marijuana,

21   connecting that to the trafficking conduct that is involved

22   here.

23           MR. AUS:  Sure.  And I agree with what you're saying

24   to some point, Your Honor.  I think the distinction, first of

25   all, between firearms and marijuana, is that DOJ has not taken

1    a back-off attitude toward crimes involving firearms, and

2    that's certainly crimes of violence.

3            On the other hand, DOJ's policy from, as I

4    understand it, is, they're not backing off of drug

5    trafficking.  That being said, one of the problems that we

6    have is, we have this drug -- this war against drugs that's

7    been going on -- which quite frankly, I would submit to Your

8    Honor is a complete failure, to a certain degree.  We're

9    taking especially a large proportion of lower class poor

10   people and locking them up.

11           With that being said, what we're doing is, we have

12   an underground economy that appears to be rising to the

13   legitimate legal level.  Which if this becomes the law across

14   the country, there's going to be, like the prohibition.  You

15   knock out the mob.  You knock out all of the underpinnings and

16   trafficking is not going to be an issue anymore because it

17   will be regulated and sold.  That hasn't happened yet, I agree

18   with you there, Your Honor.

19           But what I'm arguing at this point is, we've gone

20   from, according to Brookings, from a vast majority of the

21   country saying, no, no, this is horrible.  Marijuana is bad.

22   It needs to be illegal.  People need to go to prison.  To now

23   it's like, well, I may not like it, but it shouldn't have the

24   stigma attached to it.

25           Once that leaves, you knock out the underpinnings,

1   again, which is the criminal activity that goes along with
2   trafficking.

3           But that would be basically -- I think that's about
4   as far as I could take it.  But I do recognize the fact, Your
5   Honor, that we're talking of possession versus trafficking, is
6   the point.

7           THE COURT:  One of the things that struck me as I
8   sat and listened to the evidence in this case is just how many
9   lives were destroyed when they came in contact with
10  Mr. Coleman.  You have a young woman who's working in a store
11  at the South Park Mall, meets Mr. Coleman, gives up the
12  legitimate occupation and becomes a drug courier.  You have
13  another woman who's a secretary for a lawyer here in town, and
14  then works in the clerk's office, and then becomes a probation
15  officer, ultimately Mr. Coleman's probation officer, meets him
16  comes, under his influence, becomes a drug courier, now in
17  prison.

18          It seems that the destructive behavior in this case
19  went far beyond the marijuana trafficking itself, and it just
20  reeked havoc.  One person came in as a painter, and left as a
21  gun trader and is in federal prison.

22          And it just -- one witness after another, they meet
23  Mr. Coleman, and they wind up in federal prison.

24          And it seems that his conduct went far beyond even
25  the trafficking and laundering convictions that the jury found

1   him guilty of. And I think my sentence has to, in some way,

2   reflect the totality of that impact.

3           MR. AUS: Certainly, Your Honor. If I may, the

4   observation, again, doing this secondhand is that these were

5   voluntary acts by people that they weren't forced into this

6   No. 1.

7           And again, I've got to wonder, if we didn't have

8   these prohibitions like we did against alcohol, that we

9   wouldn't have this destruction.

10          And so given all that, I understand Your Honor has

11  to fashion a sentence that is sufficient. But I also looked

12  at this that we're basically -- we're taking this young man

13  and throwing his life away by basically saying, son,

14  regardless, you're going to do 50 years. You're going to be

15  in your 70s before you can get out. And given that, I say

16  that takes him out of the picture completely. That's what I'm

17  asking the Court to consider.

18          THE COURT: Thank you.

19          MR. AUS: Thank you, sir.

20          THE COURT: I understand your arguments, and I will

21  take them into consideration.

22          MR. AUS: Thank you.

23          THE COURT: Mr. Coleman, you don't have to say

24  anything, but if there's anything you wish to tell me I'll be

25  glad to hear from you.

1    DEFENDANT COLEMAN:  Yes.  Just today for the record
2    I'm claiming my position as an occupant of the executive
3    office to the Parker Antron Coleman estate.  The terms I want
4    met on closing the certified document with copies already sent
5    to the Office of the United States Court Administrator, U.S.
6    Attorney General Anne M. Tompkins and yourself.  You should be
7    receiving a letter from the director himself regarding these
8    matters, because no one has the handwritten delegated
9    authority to administer my estate.  That's about it.  If you
10   want to give him a copy.
11           THE COURT:  I'll be glad to receive, Mr. Aus,
12   whatever Mr. Coleman wishes me to review.
13           MR. AUS:  May I approach, Your Honor?
14           THE COURT:  You may.
15           MR. AUS:  (Handing paper writing to the Court.)
16           THE COURT:  Thank you.
17           Mr. Kaufman.
18           MR. KAUFMAN:  Thank you, Your Honor.
19           We submit that in this case a variance is not
20   appropriate.  I would submit, based on the surrounding
21   circumstances of this case, that we would submit that Your
22   Honor should consider that high end of the range.
23           THE COURT:  The strongest argument for a variance in
24   my mind is that 50 years is enough.  If you want to tell me
25   why 50 years is not enough to accomplish the 3553(a) factors.

1          MR. KAUFMAN:  Well, Your Honor, obviously the

2     guidelines are advisory, Your Honor can go down to 50 years.

3     But what's that doing is rejecting the guidelines as

4     sufficient but not greater than necessary in this case.  I

5     don't believe that the facts of this case merit something less

6     than what the guidelines --

7          THE COURT:  The guidelines, if it were just a pure

8     guideline analysis, I think -- I think I would be less

9     persuaded.

10         But here we have the guidelines plus, not one, but

11    two 924(c) enhancements.  The first one is five, the second

12    one is 25.  And it seems that the 25 does impact the 3553(a)

13    factor of protection.

14         If Mr. Coleman is going away for 30 years for two

15    guns, before you even get to the guideline argument, that

16    seems to be a different argument than rejecting the guidelines

17    out of hand.

18         MR. KAUFMAN:  Well, Your Honor, I don't believe that

19    there's anything right now but that the second 924(c) might be

20    in play at some point, and it could enure to Mr. Coleman's

21    benefit.  And so whatever sentence Your Honor gives for the

22    drug trafficking, may have much more significance for his

23    overall sentence.

24         So I want to look at what the law is now, but at the

25    same time I can't ignore that there may be a movement that

1  could impact it.

2  THE COURT:  There's no way under the law of running

3  things in a way that would accomplish both of those purposes.

4  MR. KAUFMAN:  I understand what you're saying, Your

5  Honor, because of the consecutive nature of the 924(c)s to any

6  other charge including the drug trafficking.

7  THE COURT:  To each other and to that -- yeah.

8  MR. KAUFMAN:  I understand, Your Honor.

9  I guess -- you know, I was nodding to myself as Your

10  Honor pointed out the noxious nature of basically coming into

11  contact with Mr. Coleman.  Your Honor was referring to

12  Nastasha Rodriguez, to Stephanie peppers.  We know that

13  Shaunda McAdoo -- I mean numerous -- and these are just some

14  of the witness names.  There are also even his own relatives,

15  Kevin Stanfield, his cousin.  It didn't matter who it was.

16  And lives have been destroyed.  That goes beyond just the

17  harmful effects of marijuana.  I don't think that anybody in

18  this room would say that marijuana has no detrimental impact

19  on society or individuals here.

20  And I would say that the Brookings Report, and any

21  trends right now, that argument is actually diminished by the

22  same reason that he's not being accountable under the

23  guidelines for the acts of violence, for the maintaining the

24  dwelling.  So it weakens the point even more, because he's

25  looking back at guidelines from over three years ago.

1  I would submit that -- I would like to focus on that

2  factor for a moment, the violence.

3  Your Honor, after Mr. Coleman was stopped -- well,

4  after his house was searched on November 2nd, 2010, all the

5  people were being stopped, there was Jerry Davis leaving,

6  there was Shaunda McAdoo, with Mr. McKneely and Mr -- the

7  three people in the vehicle that were leaving with the $25,000

8  or so in cash, Mr. Davis, that after that point in time, he

9  and Ms. McAdoo went to Club Ice to essentially threaten Jerry

10 Davis through his brother who worked at the club.

11 Additionally, as we noted in our initial 404(b)

12 motion, there was an incident on November 12, 2008 -- or at

13 least that's the date of the report, I should say, and I think

14 that was the date of the incident -- when Mr. Coleman,

15 according to this report, was with Mr. Davis. There was a

16 disagreement about a small drug debt, I think it was only

17 $800. But the allegation is that Mr. Coleman shot into the

18 dwelling he believed to belong to the person with whom he was

19 having that argument. It turned out that that person had

20 left, but Mr. Coleman was identified as a suspect in that

21 case. So we have a violence issue.

22 We also know that these firearms -- Mr. Aus was

23 referring to the three or more firearms. Well, it was the one

24 firearm that was in his residence on the November 2nd date.

25 And then upon his arrest two weeks later on November 16th,

1  that secret compartment that he had in the Porsche Cayenne

2  behind the passenger seat where he had two more firearms.

3          We know that he was purchasing firearms from

4  Mr. Hunt, the painter that Your Honor referred to.

5          And he was also disposing of weapons through

6  Ms. Peppers, prior to her becoming a cooperator in his case.

7          So there is violence, there's also another element

8  of danger.  He was facilitating trafficking through the

9  commercial airlines.

10         When I think about this case, I can say to myself,

11  thank God they were not sending bombs.  They were

12  circumventing security to get the marijuana onto the planes.

13  And if he had any kind of terroristic plans, they could just

14  as easily, without any screening, have put a bomb onto the

15  planes.  That part of the case horrified me when I learned

16  that was happening there.

17         Your Honor, I understand what you're saying, 50

18  years is enough, or arguably is enough.

19         THE COURT:  I'm saying that's the argument.

20         MR. KAUFMAN:  Arguably, exactly, Your Honor.  And I

21  just -- I just believe that based on the wreckage that is in

22  his wake, friends, family, strangers, the lives that were

23  destroyed, the level of trafficking here, the level of harm to

24  the overall community, and the very real danger that he posed

25  and poses, in light of his limited allocution here today here,

1    Your Honor, that, Your Honor, the guideline sentence, and I

2    suggest possibly the life on the drugs is sufficient but not

3    greater than necessary.

4            THE COURT:  Thank you.

5            Mr. Coleman, if you would please stand.

6            DEFENDANT COLEMAN:  (Complies.)

7            THE COURT:  I have reviewed the information

8    contained in the presentence report as our conversation has

9    indicated.  I very distinctly remember the evidence in the

10    case.

11            I've consulted the advisory guidelines, I've made

12    the guideline rulings that I have, and I've listened to the

13    arguments of the attorneys, and considered exhibits that have

14    been submitted today, the judgment conviction that is

15    reflected in Government's Exhibit 12 from trial, and the

16    statement that Mr. Parker has tendered to me concerning --

17    well, I'm not sure what it's concerning, really.  But the

18    directive sent to the Administrative -- the director of the

19    Administrative Office of the Courts.  I've considered all of

20    that and am prepared to state a sentence.

21            Pursuant to the Sentencing Reform Act of 1984, it is

22    the judgment of the Court, having considered the factors noted

23    in 18, United States Code, Section 3553(a), that the

24    Defendant, Parker Antron Coleman, is hereby committed to the

25    custody of the United States Bureau of Prisons to be in prison

1  for a term of 30 years on Count One; 240 months concurrent on

2  Count Two; 120 months concurrent on each of Counts Three, Five

3  and Seven; 60 months consecutive on Count Four; and 300 months

4  consecutive on Count Six, for a total term of 60 years.

5  A sentence of 60 years is the low end of the

6  advisory guideline. It is 10 years higher than the mandatory

7  minimum -- application of the mandatory minimums in this case.

8  It takes into consideration the 3553(a) sentencing

9  factors, and is deemed by the Court to be sufficient, but not

10  greater than necessary to accomplish those factors, including

11  the need for the imposed sentence to reflect the seriousness

12  of the offense, promote respect for the law, just punishment,

13  adequate deterrence, and to protect the public from further

14  crimes of the defendant.

15  It takes into account the very serious nature of the

16  underlying criminal activity.

17  Mr. Aus makes a strong argument that the mandatory

18  minimum time is sufficient, especially in light of trends,

19  public trends with respect to issues related to marijuana, as

20  well as public perception arguments, and DOJ policy arguments.

21  The Court has seriously considered those arguments,

22  but believes that notwithstanding those trends to the extent

23  they exist, Mr. Coleman's conduct in the instant case, leading

24  a coast-to-coast marijuana trafficking ring, which involved

25  the transportation of hundreds of pounds of marijuana at a

1   time, back and forth, from California to North Carolina, and

2   hundreds of thousands of dollars going the other way, being

3   laundered through banks, being used in a way that has such

4   destructive impact, both in terms of spreading marijuana

5   throughout our community, but also destroying the lives of

6   those Mr. Coleman touched.

7           His leadership of this multi-defendant, multi-state

8   trafficking organization, the attempts made both to manipulate

9   testimony, and to doctor evidence in terms of trying to avoid

10  criminal liability for these charges, the corporation of TSA

11  officials, the obstructive conduct.

12          The fact that all of that was done after Mr. Coleman

13  had previously been convicted of a felony offense, served jail

14  time, and then returned to drug trafficking, convinces the

15  Court that taking into account the 3553(a) factors, including

16  the need to avoid unwarranted sentencing disparity, that

17  Mr. Coleman should be treated, and will be treated by this

18  Court as a recidivist marijuana trafficker, who led this

19  Charlotte end of this very serious trafficking organization.

20          The Court recommends that Mr. Coleman be allowed to

21  participate in any educational and vocational programs while

22  incarcerated.  And calls to the attention of the custodial

23  authorities, that Mr. Coleman has a history of substance abuse

24  and recommends that he be allowed to participate in any

25  available substance abuse treatment program, and if eligible,

1  receive the benefits of 18, United States Code, Section

2  3621(e)(2).

3        Upon release from imprisonment, the defendant is to

4  be subjected to a five-year term of supervised release.  This

5  term consists of five years on Counts One, Four and Six, and

6  three years on Counts Two, Three, Five and Seven; all terms to

7  run concurrently.

8        Within 72 hours of release from the custody of the

9  Bureau of Prisons, the defendant shall report in person to the

10 probation office in the district to which he is released.

11 While on supervised release, the defendant shall not commit

12 another federal, state or local crime.  And shall comply with

13 the standard conditions that have been adopted by the Court in

14 the Western District of North Carolina.

15       It is further ordered that the defendant pay to the

16 United States a special assessment of $700, due and payable

17 immediately.

18       The Court finds that the defendant does not have the

19 ability to pay a fine or interest, the Court will waive

20 payment of a fine and interest in this case.

21       Mr. Kaufman, with respect to forfeiture, does the

22 government have anything additional to add that it wishes to

23 be included in the judgment in this case?

24       MR. KAUFMAN:  Your Honor, I was just checking with

25 the case agents about that.  There are various items that are

1  directly linked to Mr. Coleman to include some money from --

2  July of 2010, which we believe has been administratively

3  forfeited.  We're not sure about the items from the

4  November 2nd, 2010 seizure.

5          THE COURT:  I'm going to order as part of this

6  judgment, that any interest the defendant has in any seized

7  property, shall be forfeited.

8          Other than what we've already discussed, is there

9  any legal reason why the sentence should not be imposed as

10  stated?

11          MR. KAUFMAN:  Your Honor, I believe because of the

12  851 enhancement, that the supervised release provision is at

13  least 10 years.  It's doubled from the five years.

14          THE COURT:  Ms. Samuels, what do you say with

15  respect to that proposition?

16          PROBATION OFFICER:  He's correct, Your Honor.

17          THE COURT:  All right.  So with respect to the

18  imposition of supervised release on Count One and Count Three.

19          MR. KAUFMAN:  For Count One, that would be 10 years,

20  Your Honor.  For Count Three it would double whatever the

21  otherwise applicable statutory provision would be.

22          THE COURT:  Ms. Samuels, can I see you at the bench?

23          PROBATION OFFICER:  (Complies.)

24          THE COURT:  All right.  So with respect to Count

25  One, where I said a five-year term of supervised release, I'll

1    amend that to be 10 years.

2                Anything else?

3                MR. KAUFMAN:  No, Your Honor.

4                THE COURT:  Let the sentence be imposed as stated.

5         Mr. Coleman, you can appeal your conviction and your

6    sentence.  Any Notice of Appeal must be filed within 14 days

7    from the entry of judgment.  If you are unable to pay the cost

8    of an appeal, you may apply for leave to appeal with no cost

9    to you.  And if you request, the Clerk of Court will prepare

10   and file a notice of appeal on your behalf.

11               I recommend that you talk to your attorney about

12   these appeal rights, but do you understand these rights as

13   I've just explained them to you?

14               DEFENDANT COLEMAN:  Yes.

15               THE COURT:  Anything further from either side?

16               MR. KAUFMAN:  No, Your Honor.

17               MR. AUS:  No, Your Honor.

18               THE COURT:  Then this matter is concluded.

19               Mr. Coleman is remanded to the custody of the

20   Marshals at this time.

21               (The matter is concluded at 9:44 a.m.)

22                      *  *  *  *  *  *

23

24

25

1  UNITED STATES DISTRICT COURT
   WESTERN DISTRICT OF NORTH CAROLINA
2  CERTIFICATE OF OFFICIAL REPORTER

3

4          I, Laura Andersen, Federal Official Court Reporter,

5  in and for the United States District Court for the Western

6  District of North Carolina, do hereby certify that pursuant to

7  Section 753, Title 28, United States Code that the foregoing

8  is a true and correct transcript of the stenographically

9  reported proceedings held in the above-entitled matter and

10 that the transcript page format is in conformance with the

11 regulations of the Judicial Conference of the United States.

12
           Dated this the 16th day of April, 2014.
13

14

15
                              S/Laura Andersen
16                            Laura Andersen, RMR
                              Federal Official Court Reporter
17

18

19

20

21

22

23

24

25